UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

ADAM LANE                                                                                            PLAINTIFF
ADC #155843

V.                                            No. 5:18CV00135-JM-JTR

KEDRICK R. AVERY, Lieutenant; and
CHRISTOPHER BUDNIK, Warden                                          DEFENDANTS

### RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge James M. Moody Jr. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the date of this Recommendation. If you do not file objections, Judge Moody can adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may waive the right to appeal questions of fact.

### I. Introduction

Plaintiff Adam Lane ("Lane") is a prisoner in the Maximum Security Unit of the Arkansas Department of Correction ("ADC"). He has filed this *pro se* § 1983 action alleging that, while he was incarcerated at the Cummins Unit: (1) Defendant Lieutenant Kedrick R. Avery ("Avery") used excessive force against him on March

26, 2018; and (2) Defendant Warden Christopher Budnik ("Budnik") authorized Avery's conduct. *Docs. 5 & 7.*[1]

Defendants have filed a Motion for Summary Judgment, a Brief in Support, and a Statement of Undisputed Material Facts, arguing that Lane's claims should be dismissed because he failed to exhaust the administrative remedies available to him at the ADC. *Docs. 20, 21 & 22.* Lane has filed a Response. *Doc. 24.* Thus, the issues are joined and ready for disposition.[2]

## II. Discussion

### A. ADC Procedures Governing the Exhaustion of Administrative Remedies

The Prison Litigation Reform Act ("PLRA") requires prisoners to exhaust their administrative remedies before filing a § 1983 action: "No action shall be

---

[1] On May 30, 2018, the Court struck Lane's initial Complaint from the record because it contained improperly joined claims. *Docs. 2 & 4.* On June 20, 2018, he filed a Substituted Complaint. *Doc. 5.* On October 29, 2018, the Court dismissed: (1) Lane's claims related to disciplinary proceedings and segregation that occurred after the March 26, 2018 use of force; and (2) all claims against Defendant Wendy Kelley. *Docs. 8 & 9.* Thus, Lane's excessive force and corrective inaction claims against Defendants Avery and Budnik are the only remaining claims in the case.

[2] Summary judgment is appropriate when the record, viewed in a light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 249-50 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex,* 477 U.S. at 323. Thereafter, the nonmoving party must present specific facts demonstrating that there is a material dispute for trial. *See* Fed R. Civ. P. 56(c); *Torgerson v. City of Rochester,* 643 F.3d 1031, 1042 (8th Cir. 2011).

brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The purposes of the exhaustion requirement include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones v. Bock,* 549 U.S. 199, 219 (2007); *see also Woodford v. Ngo*, 548 U.S. 81, 88-91 (2006).

The PLRA requires inmates to: (1) *fully and properly* exhaust their administrative remedies *as to each claim* in the complaint; and (2) complete the exhaustion process *before* filing an action in federal court. *Jones,* 549 U.S. at 211, 219-20, 223-24; *Woodford,*, 548 U.S. at 93-95; *Burns v. Eaton,* 752 F.3d 1136, 1141-42 (8th Cir. 2014). Importantly, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones,* 549 U.S. at 218; *see also Woodford*, 548 U.S. at 90 (explaining that administrative exhaustion "means using all steps that the agency holds out, and doing so properly so that the agency addresses the issues on the merits"). Thus, to satisfy the PLRA, a prisoner must comply with the exhaustion requirements of the incarcerating facility before he can properly file

a § 1983 action.

To fully and properly exhaust administrative remedies, an ADC prisoner must file: (1) a "Step One" informal resolution raising the claim with the designated unit-level problem-solver within fifteen days of the alleged incident; (2) a "Step Two" formal unit-level grievance, raising that claim, within three days of receiving a response to the Step One informal resolution; and (3) an appeal to the appropriate Deputy Director. ADC Adm. Dir. 14-16 § IV(E) through (G) ("AD 14-16").[3] The ADC's grievance policy requires that, in connection with each claim, an inmate must "*specifically name each individual involved*," and include a "brief statement that is specific as to the substance of the issue or complaint to include the date, place [and] *personnel involved* or witnesses." AD 14-16 §§ IV(C)(4) & (E)(2) (emphasis added). The grievance forms themselves repeat these instructions to ensure prisoners are aware of them. AD 14-16, Att. 1 ("[B]e specific as to the complaint, date, … place, name of personnel involved and how you were affected."). Finally, the ADC's grievance policy cautions prisoners that, if they fail to "exhaust their administrative remedies as to all defendants at all levels of the grievance procedure … their lawsuits or claims may be dismissed immediately" under the PLRA. AD 14-16 § IV(N); *see*

---

[3]Defendants submitted a copy of AD 14-16 with their summary judgment papers. *Doc. 20, Ex. A.*

4

*also* § IV(C)(4) & (D)(2) (both advising inmates to fully exhaust a grievance prior to filing a lawsuit).

### B. Analysis

Although Lane filed a Response to Defendants' Motion for Summary Judgment, he addressed only the merits of his excessive force claim and did *not* contest any of the facts set forth in Defendants' Statement of Undisputed Material Facts that are relevant to the exhaustion issue. *See Docs. 22 & 24.* Accordingly, all of those facts, which form the basis for Defendants' Motion for Summary Judgment, are now deemed to be admitted. *See* Local Rule 56.1(c); *Reasonover v. St. Louis County, Mo.*, 447 F.3d 569, 579 (8th Cir. 2006) (holding that grant of summary judgment motion was proper where non-moving party had not filed response to motion, district court had under local rules deemed as admitted facts set forth in summary judgment motion, and summary judgment was appropriate based on uncontroverted facts set forth in motion).

In his Substituted Complaint, Lane alleges that, on March 26, 2018: (1) Avery came to his cell and tried to force him to accept a man of another race as a cellmate, when Lane's records show that he "cannot house outside [his] race"; (2) when Lane protested, Avery said Lane would be moved to punitive isolation; (3) when Lane explained that he was a Class 2 inmate who should be in administrative segregation,

5

not punitive isolation, Avery left, but later returned and "hit [Lane] with a large poison gas," which "almost killed" him. According to Lane, Budnik "cleared" Avery's conduct. *Doc. 5 at 4-5.*

Lane filed only one grievance that is relevant to the claims he is asserting against Defendants: CU-18-00403. *Doc. 22 ¶ 23; see Doc. 20, Ex. B & Ex. C ¶¶ 17-18* (Grigsby Decl.).[4] He initiated this grievance on March 27, 2018, by filing a Step One informal resolution which stated the following:

> On 3-26-18 at approximately 3 pm, I was doing my daily prayer and reviewing my holy scriptures when Lt. Avery came to my door in a very unethical and aggressive manner stating I don't give no f*** about nothing you're taking a celly who is not your race. I told him it is a well-known fact on documentation [that] I cannot cell/house with another race. I told him a lot of people discriminate against Hebrews and Asianics. He said he wanted to put me in the East Building. I told him I am Ad-Seg and I have a right to access to the news, and I am Class #2 and will be Class #1 in 3 days. He stormed off. I continued in my prayers. Next he came back and was mumbling something. I was trying to speak to the other officer present and he mased [sic] me with gas which got in my lungs, eyes, nose, hair and all over my belongings. I was escorted to East Building in great pain and suffering, thrown into a shower naked for 6 hours, then thrown in a cell with no hygiene, no shoes, no socks, no shirt, no mat, and without my last dinner tray. And at no time was my property inventoried or logged. I have no Bible to do my studies. In an extremely dirty cell. Please escort Avery off premises.

---

[4] In support of their position that Lane failed to exhaust his administrative remedies, Defendants submitted: (1) a declaration from Terri Grigsby, the ADC's Inmate Grievance Supervisor; and (2) copies of the relevant grievance documents. *Doc. 20, Exs. B & C.*

*Doc. 20, Ex. B at 2*. On April 3, 2018, a non-party officer responded: "You refused cellmate." *Id.* The same day, Lane signed and dated the grievance form, acknowledging that he had received the Step One response. *Id.*

On April 11, 2018 – eight days later – Lane completed the section of the grievance form to proceed with a Step Two formal grievance, which was designated as CU-18-00403. *Id.* On April 13, 2018, a non-party grievance officer rejected the grievance as untimely. *Id. at 1*. As a result, Lane did not receive a decision *on the merits* of his complaints at Step Two. Additionally, after his Step Two grievance was rejected on procedural grounds, Lane failed to appeal that decision (Step Three) to the Deputy Director. *Id.*

Defendants argue that, because Lane failed to fully and properly exhaust CU-18-00403, in accordance with the ADC's grievance procedures, he cannot rely on that grievance to establish that he exhausted the excessive-force claim that he is asserting against Avery in this § 1983 action. Defendants further argue that, because Lane failed to name Budnik in CU-18-00403 or file any other grievances naming Budnik, he also failed to exhaust his administrative remedies regarding the corrective inaction claim he has raised against Budnik in this § 1983 action. The Court agrees.

The ADC grievance policy clearly instructs prisoners to file a Step Two

formal unit-level grievance within *three working days* of receiving the Step One response. The ADC grievance policy also clearly explains to prisoners how to appeal a Step Two decision rejecting a grievance for procedural reasons.[5] Lane does *not* dispute that he failed to comply with these procedural requirements. Accordingly, he cannot rely on CU-18-00403 to establish that he exhausted the excessive-force claim that he is now asserting against Avery. *See Woodford,* 548 U.S. at 90-91) ("proper" exhaustion under the PLRA means "using all steps that the agency holds out, and doing so *properly* … so that the agency addresses the issues on the merits," and "demands compliance with an agency's deadlines and other critical procedural rules"); *Porter v. Sturm,* 781 F.3d 448, 451-52 (8th Cir. 2015) (finding incomplete exhaustion when a prisoner failed to "pursue the … grievance process to its final stage").

The ADC grievance policy also requires inmates to name each individual involved for a proper investigation and response to be completed by the ADC.[6] Lane does *not* dispute that he failed to name or otherwise describe Budnik, or his alleged

---

[5] *See* AD 14-16 § IV(E)(11) ((providing that "if the problem-solver returns Step One on the day it was submitted, the inmate has only three (3) working days from receipt of that response to file Step Two"), & § IV(G)(2) (providing for appeal to Deputy Director if inmate believes his Step Two unit-level grievance was "improperly rejected").

[6] *See* AD 14-16 § IV(C)(4) & (E)(2) (requiring inmate to "specifically name each individual involved").

corrective inaction, at any point in the grievance proceedings for CU-18-00403 or in any other grievance. Because the ADC was *not* on notice of any claims by Lane about the alleged misconduct of Budnik, it was not given the opportunity to investigate the matter. *See Townsend v. Murphy,* 898 F.3d 780, 784 (8th Cir. 2018) (because the ADC prisoner "made no mention [in his grievance] of Romine or White, nor of the specific factual allegations that would later appear in his federal complaint … or even hint that anyone other than Murphy was responsible for his exposure to chlorine gas," he did not exhaust his administrative remedies against them); *Burns,* 752 F.3d at 1141-42 (because "the ADC was not asked to evaluate of the conduct of [prison guard] White or the distinct § 1983 claims first asserted by Burns in his [§ 1983] complaint," Burns's § 1983 claim against White asserted "a new grievance … completely unexhausted"). Accordingly, Lane cannot rely on CU-18-00403 to establish that he exhausted the corrective inaction claim that he is now asserting against Budnik in this action.

Finally, Lane presents documents showing that the March 26, 2018 incident also led to: (1) an internal affairs investigation of the use of force; and (2) disciplinary proceedings against Lane for refusing to obey orders. *Doc. 7 at 3-4; Doc. 24 at 8-13*. Apart from being irrelevant to Lane's claims, those documents do no alter or affect Lane's obligation, under the PLRA, to exhaust the ADC's

administrative grievance process. *See Pavey v. Conley,* 663 F.3d 899, 905 (7th Cir. 2011) (prisoner's participation in an internal affairs investigation does not satisfy the PLRA's requirement to exhaust his administrative remedies); *Panaro v. City of North Las Vegas,* 432 F.3d 949, 953 (9th Cir. 2005) (a prisoner cannot constructively exhaust through participation in an internal investigation, which is not "equivalent to [the] assertion of a grievance in the administrative procedure available at the [prison]"); *Johnston v. Chaney*, No. 2:17cv60-BSM-BD, 2017 WL 5762464, at *2 (E.D. Ark. Nov. 8, 2017) (holding that, because ADC prisoner's excessive-force claim was "distinct from his disciplinary conviction" that arose from the same underlying incident, he was required to exhaust that claim through the ADC grievance procedure).

### III. Conclusion

Accordingly, because Lane did *not* fully and properly exhaust his available administrative remedies regarding the excessive force and corrective inaction claims he is now asserting against Defendants Avery and Budnik, those claims should be dismissed, without prejudice. *See Jones,* 549 U.S. at 211 ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought to court.").

IT IS THEREFORE RECOMMENDED THAT Defendants' Motion for

Summary Judgment (*Doc. 20)* be GRANTED and that Lane's claims against them be DISMISSED, without prejudice, for failure to exhaust, thereby dismissing this case in its entirety.

DATED this 16th day of July, 2019.

_____
UNITED STATES MAGISTRATE JUDGE